Scott S. Thomas, NV Bar No. 7937
sst@paynefears.com
Sarah J. Odia, NV Bar No. 11053
sjo@paynefears.com
PAYNE & FEARS LLP
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, Nevada 89128
Telephone: (702) 851-0300
Facsimile: (702) 851-0315

Attorneys for CENTEX HOMES

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CENTEX HOMES, a Nevada general partnership,<br><br>        Plaintiff,<br><br>    v.<br><br>ZURICH SPECIALTIES LONDON LIMITED, a New York corporation; ASSURANCE COMPANY OF AMERICA, an Illinois corporation; NORTHERN INSURANCE COMPANY OF NEW YORK, an Illinois corporation;  ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut corporation; UNIONAMERICA INSURANCE COMPANY LIMITED, successor in interest to ST. PAUL REINSURANCE COMPANY LIMITED, a London corporation,<br><br>        Defendants. | Case No.<br><br>**CENTEX HOMES' COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br><br>**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(3) VIOLATIONS OF NEVADA'S UNFAIR CLAIMS SETTLEMENT PRACTICES ACT, NEV. REV. STAT. ANN. § 686A.310;**<br><br>**(4) DECLARATORY RELIEF—DUTY TO DEFEND.**<br><br>**JURY DEMAND** |

Plaintiff Centex Homes ("Centex") hereby alleges as follows:

**PARTIES**

1. At all times mentioned herein, Centex Homes was and is a Nevada general partnership with its principal place of business in Atlanta, Georgia.  The partners of Centex Homes include: (a) Centex Real Estate Corporation, (b) Nomas LLC and (c) Centex International II, LLC. Centex Homes is, and at all times mentioned herein, was authorized to do business in the State of

1 Nevada.

2     2.    At all times mentioned herein, Nomas LLC was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.  The sole member of Nomas LLC is Centex International II, LLC.

    3.    At all times mentioned herein, Centex International II, LLC, was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.  The sole member of Centex International II, LLC is Centex LLC, which is also a Nevada limited liability company with its principal place of business in Atlanta, Georgia.

    4.    At all times mentioned herein, the sole member of Centex LLC is Centex Home Corporation which is a Michigan Corporation with its principal place of business in Atlanta, Georgia.

    5.    At all times mentioned herein, Centex Real Estate Corporation ("Centex RE Corp.") was and is a Nevada corporation with its principal place of business in Atlanta, Georgia. Centex RE Corp. is, and at all times mentioned herein, was doing business in the County of Maricopa, State of Arizona.

    6.    Plaintiff is informed and believes, and on that basis alleges, that Defendant ZURICH SPECIALTIES LONDON LIMITED ("Zurich London") at all times mentioned herein was and is a New York corporation with its principal place of business in New York.  Upon information and belief, Zurich London is and was at all times mentioned herein eligible to do business as an insurer in the State of Nevada.

    7.    Plaintiff is informed and believes, and on that basis alleges, that Defendant ASSURANCE COMPANY OF AMERICA ("Assurance")  at all times mentioned herein was and is an Illinois corporation with its principal place of business in Illinois.  Upon information and belief, Assurance is and was at all times mentioned herein eligible to do business as an insurer in the State of Nevada.

    8.    Plaintiff is informed and believes, and on that basis alleges, that Defendant NORTHERN INSURANCE COMPANY OF NEW YORK ("Northern")  at all times mentioned herein was and is an Illinois corporation with its principal place of business in Illinois.  Upon

information and belief, Assurance is and was at all times mentioned herein eligible to do business as an insurer in the State of Nevada.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendant ST. PAUL FIRE AND MARINE INSURANCE COMPANY ("St. Paul") at all times mentioned herein was and is a Connecticut corporation with its principal place of business in Connecticut. Upon information and belief, St. Paul is and was at all times mentioned herein eligible to do business as an insurer in the State of Nevada.

10. Plaintiff is informed and believes, and on that basis alleges, that Defendant UNIONAMERICA INSURANCE COMPANY LIMITED, a successor in interest to ST. PAUL REINSURANCE COMPANY LIMITED ("Unionamerica") at all times mentioned herein was and is a London, UK corporation with its principal place of business in London, UK. Upon information and belief, Unionamerica and its predecessor in interest are and were at all times mentioned herein eligible to do business as an insurer in the State of Nevada.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00, exclusive of interest and costs, and because complete diversity exists between Centex and Defendants.

12. Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**The Liberty Hill Estates Development**

13. Centex is a homebuilder that participated in the construction of a residential development known as Liberty Hill Estates (the "Development"), which is located in Sparks, Nevada.

14. Centex performed no work on the Development; instead, subcontractors performed all of the work.

15. Mountain Aire, Inc. ("Mountain") subcontracted with Centex to, among other things, provide heating, ventilation, and air conditioning systems in the Development.

16. Premier Landscaping ("Premier") subcontracted with Centex to, among other things, fine grade, landscape, and provide irrigation in the Development.

17. Valley Concrete Company, Inc. ("Valley") subcontracted with Centex to, among other things, provide concrete flatwork in the Development.

18. Western Shower Door, Inc. ("Western") subcontracted with Centex to, among other things, provide shower doors and shower enclosures in the Development.

**The Assurance and Northern Policies**

19. Mountain performed work at the Developments pursuant to one or more written subcontracts that it entered into with Centex.

20. Each subcontract required Mountain to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

21. Upon information and belief, Mountain obtained the following commercial general liability policies from Assurance and Northern ("the Assurance and Northern policies"):

| Insurer | Policy Number | Policy Period | Additional Insured |
|---|---|---|---|
| Northern & Assurance | SCP 38317435 | 4/29/01 – 4/29/05 | Centex |

22. The Assurance and Northern policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of Mountain's work.

23. The coverage afforded under the Assurance and Northern policies requires Defendants Assurance and Northern to defend Centex against all claims that create potential liability for covered property damage or bodily injury.

**The St. Paul Policies**

24. Premier performed work at the Development pursuant to written subcontracts that it entered into with Centex.

25. Each subcontract required Premier to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

26. Premier obtained the following commercial general liability policies from St. Paul ("the St. Paul policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| St. Paul | GL08100458 | 11/8/03 – 11/8/08 | Premier | Centex |

27. The St. Paul policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of Premier's work.

28. The coverage afforded under the St. Paul policies require Defendant St. Paul to defend Centex against all claims that create potential liability for covered property damage or bodily injury.

**The Zurich London Policies**

29. Western performed work at the Development pursuant to one or more written subcontracts that it entered into with Centex.

30. Each subcontract required Western to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

31. Western obtained the following commercial general liability policies from Zurich London ("the Zurich London policies"):

| Insurer | Policy Number | Policy Period | Additional Insured |
|---|---|---|---|
| Zurich London | TCS 60156-00 | 10/1/00 – 10/1/01 | Centex |

| Insurer | Policy Number | Policy Period | Additional Insured |
|---|---|---|---|
| Zurich London | TCS 60156-01 | 10/1/01 – 10/1/02 | Centex |
| Zurich London | TCS 60156-02 | 10/1/02 – 10/1/03 | Centex |

32. The Zurich London policies were endorsed to cover Centex as an "additional insured" with respect to liability arising out of Western's work.

33. The coverage afforded under the Zurich London policies required Defendant Zurich London to defend Centex against all claims that create potential liability for covered property damage or bodily injury.

**The Unionamerica Policy**

34. Valley performed work at the Development pursuant to one or more written subcontracts that it entered into with Centex.

35. Each subcontract required Valley to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name "Centex Homes, a Nevada general partnership, Centex Real Estate Corporation, a Nevada corporation, and the owner of the Site if other than Centex Homes, their respective officers, directors, partners, members and employees, as additional insureds" under those insurance policies.

36. Valley obtained the following commercial general liability policy from Unionamerica ("the Unionamerica policy"):

| Insurer | Policy Number | Policy Period | Additional Insured |
|---|---|---|---|
| Unionamerica | GL-5024-1-02-1 | 1/1/02 – 1/1/03 | Centex |

37. The Unionamerica policy was endorsed to cover Centex as an "additional insured" with respect to liability arising out of Valley's work.

38. The coverage afforded under the Unionamerica policy required Defendant Unionamerica to defend Centex against all claims that create potential liability for covered property damage or bodily injury.

/ / /

**The *Story* Action**

39. On or about March 29, 2012, homeowners in the Development filed a first amended construction defect complaint entitled, *Susan H. Story, et al. v. Centex Homes*, Second Judicial District Court, Washoe County, Nevada, Case No. CV12-00240 ("*Story*"), against Centex alleging, among other things, that homes in the Development contained defective and negligent engineering and construction, that these defects caused damages that Centex is liable for.

40. The *Story* action seeks damages from Centex for property damage arising out of the work or ongoing operations of various subcontractors, including Mountain, Premier, Valley, and Western.

41. As a result of the claims alleged in the *Story* action, Centex has incurred significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**Assurance and Northern Respond to the *Story* Action**

42. Centex tendered the defense and indemnity of the *Story* action to Assurance and Northern on or around October 20, 2011.

43. On January 27, 2012, Assurance and Northern improperly denied their duty to defend Centex in the *Story* action under the Assurance and Northern policies issued to Mountain.

44. Pursuant to the Assurance and Northern policies, Assurance and Northern, and each of them respectively owes a duty to defend Centex and pay all of the defense fees and costs that Centex incurred in defending the *Story* action.

45. As a result of each Northern and Assurance's failure  acknowledge their respective duties to defend Centex, Centex was forced to expend significant amounts of time and money defending itself against the *Story* action.

**St. Paul Responds to the *Story* Action**

46. Centex tendered the defense and indemnity of the *Story* action to St. Paul on or around October 20, 2011.

47. On January 24, 2012, St. Paul improperly denied its duty to defend Centex in the *Story* action under the St. Paul policies issued to Premier.

48. As a result of St. Paul's conduct, Centex was forced to expend significant amounts of time and money defending itself against the *Story* action.

49. Pursuant to the St. Paul policies, St. Paul owes a duty to defend Centex and pay all of the defense fees and costs that Centex incurred in defending the *Story* action.

**Unionamerica Responds to the *Story* Action**

50. Centex tendered the defense and indemnity of the *Story* action to Unionamerica on or around October 20, 2011.

51. Over two years later, on October 30, 2013, Unionamerica agreed to defend Centex. However, since that time, Unionamerica has limited its obligation to pay defense fees and costs in the *Story* action to only a portion of the total defense fees and costs it owes.

52. To date, Unionamerica has paid approximately $138,399.92 towards Centex's defense costs in the *Story* action.

53. Pursuant to the Unionamerica policy, Unionamerica owes a duty to defend Centex and pay all of the defense fees and costs that Centex incurred in defending the *Story* action.

54. As a result of Unionamerica's failure to fully defend Centex, Centex was forced to expend significant amounts of time and money defending itself against the *Story* action.

**Zurich London Responds to the *Story* Action**

55. Centex tendered the defense and indemnity of the *Story* action to Zurich London or around October 20, 2011.

56. On April 17, 2012, Zurich London improperly denied its duty to defend Centex in the *Story* action under the Zurich London policies.

57. Pursuant to the Zurich London policies, Zurich London owes a duty to defend Centex and pay all of the defense fees and costs that Centex incurred in defending the *Story* action.

58. As a result of Zurich London's failure to acknowledge its duty to defend Centex, Centex was forced to expend significant amounts of time and money defending itself against the *Story* action.

///

///

## FIRST CAUSE OF ACTION

### Breach of Contract

(By Centex Against All Defendants)

59. Centex realleges the allegations contained in paragraphs 1 through 58, inclusive, and incorporates them by reference as though fully set forth herein.

60. Centex requested that Defendants defend Centex against the *Story* action as described more fully above. Centex has performed all obligations owing under each of the policies in connection with its tender of defense, and Centex has satisfied all relevant conditions precedent.

61. Defendants have failed to discharge their contractual duties to defend Centex against the *Story* action. More particularly, Defendants: (1) breached their contracts by failing to promptly respond to Centex's tenders; and (2) breached their contracts by refusing to defend Centex.

62. As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Centex has been damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

(By Centex Against All Defendants)

63. Centex realleges the allegations contained in paragraphs 1 through 62, inclusive, and incorporates them by reference as though fully set forth herein.

64. Defendants owe Centex a duty of good faith and fair dealing, obligating Defendants to put Centex's interests equal with or ahead of their own interests and to do nothing to deprive Centex of policy benefits.

65. Rather than honor their obligations, Defendants have instead sought to protect their own interests and have subordinated Centex's interests by refusing to discharge contractual duties without reasonable grounds or good cause.

66. In addition, Defendants have acted with knowledge or reckless disregard of the lack of a reasonable grounds or good cause.

67. Accordingly, Defendants have deprived Centex of its rights and benefits under their policies. For example:

   a. Pursuant to clearly applicable law, Defendants have a duty to promptly investigate and respond to Centex's tenders and indicate whether they would defend Centex against the *Story* action. Defendants understand and are fully aware of this duty. Despite their knowledge of this obligation, Defendants have failed to respond to Centex's tenders in a timely fashion, or at all. On information and belief, these delays violate Defendants' own internal policies. To further delay making coverage decisions and avoid assuming the financial burden of defending Centex, on some occasions Defendants requested documents that Centex had already supplied to Defendants so as to force Centex to continue defending itself and incur costs without Defendants' support. Defendants delayed rendering coverage decisions in conscious disregard of the risk that these delays would jeopardize Centex's ability to adequately defend itself against the *Story* action, and would jeopardize Centex's ability to settle those matters. Defendants' decisions to delay responding to Centex's tenders were motivated by a desire to unfairly enhance their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex. Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective. Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

   b. Pursuant to clearly applicable law, Defendants have a duty to defend additional insureds, like Centex, for claims alleging potential for liability arising out of the work or ongoing operations of their named insureds. Defendants understand and are fully aware of this duty. Despite knowledge of this obligation, Defendants routinely attempt to avoid this obligation by taking arbitrary and capricious coverage positions. More specifically, despite knowledge of the terms of their insurance policies, additional-insured endorsements, the relevant case law, and the facts alleged in *Story* action, Defendants refused to acknowledge their duties to defend Centex against the *Story* action, even though most Defendants readily acknowledged this duty to their own named insureds in each of these cases. Defendants consistently and intentionally treat Centex

and other additional insured differently from named insured with respect to the degree of investigation undertaken, the coverage positions Defendants' assert and the defense they are willing to provide. Likewise, Defendants took coverage positions in the *Story* action that are inconsistent with positions they took in other identical cases and situations. Defendants' decisions to deny or delay responding to Centex's tenders were motivated by a desire to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex. Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective. Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

c. Pursuant to clearly applicable law, Defendants have a duty to fully defend Centex, as opposed to only providing Centex with a proportional or partial defense based on the liability of their named insureds. Defendants understand and are fully aware of this duty. Despite Defendants' knowledge that they have a duty to fully defend Centex against the *Story* action pursuant to clearly applicable law, Defendants unreasonably refused to do so. These refusals were motivated by a desire to enhance unfairly Defendants' own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex. Defendants acted in a deliberate and concerted fashion to achieve this self-serving economic objective. Defendants' conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Centex, and recklessly disregards Centex's economic and property rights.

68. Defendants' conduct as alleged in this Complaint is part of a pattern of unfair claims practices intentionally engaged in by Defendants to enhance unfairly their own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Centex and other additional insureds. These systematic practices include: (1) failing to respond promptly to tenders from additional insureds; (2) wrongfully denying additional insureds coverage owed under policies; and (3) refusing to supply a full defense to additional insureds as required by law and instead trying to limit coverage obligations to funding only a small fraction of the additional insured's defense.

69. As a direct and proximate result of Defendants' tortious breach of the duty of good faith and fair dealing, Centex has suffered damages in an amount to be proven at trial, including without limitation, legal costs incurred to obtain the benefits of the respective policies.

70. In addition, Defendants' conduct as alleged in this Complaint is despicable and has been carried out in willful and conscious disregard of Centex's rights and economic interests, and is malicious, fraudulent and oppressive. Accordingly, Defendants' conduct entitles Centex to punitive damages.

71. Defendants' malicious, fraudulent, and oppressive conduct includes, for example:

   a. As described above, Defendants were fully aware of their duty to promptly investigate and respond to Centex's tenders and indicate whether Defendants would defend Centex against the *Story* action, but Defendants delayed responding to Centex's tenders and ignored Centex's numerous requests. Defendants knew that failing to promptly respond to Centex's tenders and defend it would violate Centex's contractual rights and jeopardize Centex's ability to successfully defend itself against the *Story* action, but Defendants did so anyway in willful and conscious disregard of Centex's rights.

   b. As described above, Defendants are fully aware of their duty to defend additional insureds, like Centex, against claims alleging potential liability arising out of the work of their named insureds, but routinely attempt to avoid these obligations by treating additional insured differently from named insureds. Defendants know this behavior violates the rights of additional insureds, like Centex, but Defendants intentionally try to deprive additional insureds, like Centex, of policy benefits in order to unfairly enhance their own profits.

   c. As described above, Defendants were fully aware of their duty to fully defend Centex as opposed to only providing a proportional or partial defense based on the liability of their named insureds. Defendants knew that failing to provide Centex with a full defense would violate its contractual rights, but Defendants intentionally claimed their duties were partial in willful violation of their contractual duties.

/ / /

/ / /

## THIRD CAUSE OF ACTION

**Violations of Nevada's Unfair Claims Settlement Practices Action,**

**Nev. Rev. Stat. Ann. § 686A.310**

(By Centex Against All Defendants)

72. Centex realleges the allegations contained in paragraphs 1 through 71, inclusive, and incorporates them by reference as though fully set forth herein.

73. Defendants' conduct constitutes a violation of one or more of the following sub-sections of Nev. Rev. Stat. Ann. § 686A.310:

    a. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

    b. Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims under insurance policies.

    c. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

    d. Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

    e. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

    f. On information and belief, Defendants have engaged in other conduct in the handling of the *Story* action that constitutes unfair practices under other provisions of NRS 686A.310.

74. As a direct and proximate result of Defendants' violations of Nev. Rev. Stat. Ann. § 686A.310, Centex has sustained damages in an amount within the jurisdictional limits of this Court, including, but not limited to, punitive damages.

75. As a direct and proximate result of Defendants' violations of Nev. Rev. Stat. Ann. § 686A.310, Centex has incurred attorneys' fees, court costs and other expenses in bringing this

action.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

76. Centex realleges the allegations contained in paragraphs 1 through 75, inclusive, and incorporates them by reference as though fully set forth herein.

77. An actual controversy has arisen and now exists between Centex, on the one hand, and Defendants, on the other hand, in that Centex contends that under the respective policies issued by each Defendant, each Defendant owes a separate and independent duty to promptly and fully defend Centex in the *Story* action.

78. Centex is informed and believes that Defendants contend otherwise.

79. Centex desires a judicial determination as follows:

    a. that each Defendant owes a separate and independent duty to defend Centex against the *Story* action;

    b. that the scope of this duty is to provide Centex with an immediate and full defense;

    c. that the obligations of any one Defendant to provide Centex with an immediate and full defense is not diminished or reduced when other Defendants owe Centex this same duty.

80. A declaratory judgment is both proper and necessary so that the respective rights, duties, and obligations of Centex and Defendants may be determined.

## PRAYER

WHEREFORE, Centex prays for judgment against Defendants as follows:

1. **FIRST CAUSE OF ACTION**:

    a. For general and specific damages in an amount to be proven at trial;

    b. For all costs and expenses at the full extent permitted by law;

    c. For pre-judgment interest and post-judgment interest at the full extent permitted by law;

    d. For attorneys' fees to the extent recoverable by applicable law; and

1       e.      For such other and further relief as the Court deems fair and proper.

2   2.  **SECOND CAUSE OF ACTION**:

3       a.      For general and specific damages in an amount to be proven at trial;

4       b.      For punitive damages at the full extent permitted by law;

5       c.      For all costs and expenses at the full extent permitted by law;

6       d.      For pre-judgment interest and post-judgment interest at the full extent permitted by law;

8       e.      For attorneys' fees to the extent recoverable by applicable law; and

9       f.      For such other and further relief as the Court deems fair and proper.

10  3.  **THIRD CAUSE OF ACTION**:

11      a.      For general and specific damages in an amount to be proven at trial;

12      b.      For punitive damages at the full extent permitted by law;

13      c.      For all costs and expenses at the full extent permitted by law;

14      d.      For pre-judgment interest and post-judgment interest at the full extent permitted by law;

16      e.      For attorneys' fees to the extent recoverable by applicable law; and

17      f.      For such other and further relief as the Court deems fair and proper.

18  4.  **FOURTH CAUSE OF ACTION**:

19      a.      For declaratory relief as described above;

20      b.      For all costs and expenses at the full extent permitted by law;

21      c.      For pre-judgment interest and post-judgment interest at the full extent permitted by law;

23      d.      For attorneys' fees to the extent recoverable by applicable law; and

24      e.      For such other and further relief as the Court deems fair and proper.

## JURY DEMAND

Centex hereby demands a trial by jury.

27  / / /

28  / / /

Respectfully submitted,

DATED: June 8, 2016

PAYNE & FEARS LLP

By      */s/ Sarah J. Odia*
SCOTT S. THOMAS, NV Bar No. 7937
SARAH J. ODIA, NV Bar No. 11053
7251 W. Lake Mead Blvd., Suite 525
Las Vegas, Nevada 89128
Tel. (702) 851-0300

Attorneys for CENTEX HOMES

4839-0447-8769.1