UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CENTEX HOMES, | Case No. 2:16-CV-1278 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| ZURICH SPECIALTIES LONDON LIMITED, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff/counterdefendant Centrex Homes's ("Centrex") motion to dismiss. (ECF No. 26). Defendant/counterclaimant Unionamerica Insurance Company Limited, as successor-in-interest to St. Paul Reinsurance Company Limited ("UIC") filed a response (ECF No. 29), to which Centrex replied (ECF No. 34).

**I.    Facts**

The instant action involves an insurance dispute arising out of a construction defect case instituted in Nevada state court.

Plaintiff Centrex was the developer/general contractor for a residential development known as Liberty Hill Estates ("Liberty"). Centrex hired various subcontractors to perform the construction. Defendant UIC issued a commercial general liability insurance policy (no. GL-5024-1-02-1) (the "policy") to Valley Concrete Company, Inc. ("Valley"), Centrex's subcontractor, under which Centrex was an additional insured.[1] Specifically, the policy covered Centrex, but only as to liability arising from Valley's work.

---

[1] The policy was issued by UIC's predecessor-in-interest, St. Paul Reinsurance Company Limited.

In October 2011, homeowners of Liberty (the "homeowners") served Centrex with pre-litigation notices alleging property damage in their homes arising from the defective work of Centrex's subcontractors. On January 27, 2012, the homeowners filed a complaint against Centrex in Nevada state court, *Story v. Centrex Homes*, case no. CV12-00240 (the "*Story*" action), seeking damages arising from the work or ongoing operations of Centrex's subcontractors. On March 29, 2012, the homeowners filed a first amended construction defect complaint in the state court action.

Centrex alleges that it tendered the defense and indemnity of the *Story* action to UIC on October 20, 2011 and that UIC responded in a letter dated March 14, 2012, wherein UIC refused to defend asserting no potential for coverage existed. As a result, Centrex hired Lee, Hernandez, Landrum, Garofalo & Blake ("Lee Hernandez").

Centrex further alleges that UIC agreed to defend Centrex in the *Story* action on October 30, 2013, but limited its obligation to the payment of defense fees and costs. Centrex alleges that UIC has only paid a portion of the total defense fees and costs (approximately $138,399.92) owed under the policy. In particular, UIC paid for defense fees and costs incurred from March 2012 through July 2014. Centrex alleges that under the policy, UIC had a duty to defend Centrex and pay all of the defense fees and costs incurred in defending the *Story* action.

On June 8, 2016, Centrex Homes filed the underlying complaint alleging four claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of Nevada's Unfair Claims Settlement Practices Act, NRS 686A.310; and (4) declaratory relief. (ECF No. 1).

UIC alleges that prior to the March 29th amended complaint, none of the plaintiffs in the *Story* action alleged claims arising from Valley's work. Specifically, UIC alleges that of the seventy-eight (78) plaintiffs, only two plaintiffs (the "Weisses") alleged claims arising out of Valley's work and that the Weisses were not parties to the *Story* action prior to March 29, 2012. UIC asserts that Centrex tendered a second letter dated March 28, 2012 to UIC, adding eleven (11) homes to the *Story* action, inclusive of the Weisses. UIC further asserts that in response to the March 28th letter, UIC agreed in writing to pay a fair and equitable share of Centrex's defense

fees and costs related to Valley and explicitly stated that UIC was not waiving its right to control the litigation, including the assignment of defense counsel.

In a letter dated January 27, 2014, Lee Hernandez advised UIC that Centrex instructed Lee Hernandez to transfer the defense of the *Story* action to Koeller, Nebeker, Carlson & Haluck, LLP ("Koeller Nebeker"). In a letter dated February 10, 2014, UIC notified Centrex that UIC was participating in Centrex's defense pursuant to a reservation of rights and through Lee Hernandez and objected to participation through Koeller Nebeker. (ECF No. 19 at 28). UIC alleges that Lee Hernandez remained counsel of record until July 11, 2014, upon which Koeller Nebeker was substituted as counsel of record. (ECF No. 19 at 28). UIC further alleges that Centrex settled the *Story* action in its entirety in July of 2014.

On October 18, 2016, UIC filed a counterclaim against Centrex Homes alleging three claims for relief: (1) declaratory relief; (2) declaratory relief; and (3) breach of contract. (ECF No. 19). In particular, UIC seeks a judicial declaration that UIC is discharged of its duty to defend Centrex in the *Story* action and that Centrex's refusal to cooperate resulted in loss of coverage under the policy. (ECF No. 19).

In the instant motion, Centrex Homes moves to dismiss UIC's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 26).

**II.    Legal Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### III. Discussion

UIC asserts that Centrex's failure to cooperate—by unilaterally switching counsel without prior notification to UIC or UIC's consent—deprived UIC of its contractual right to control Centrex's defense in the *Story* action and constituted a breach of Centrex's obligations under the policy, thereby discharging UIC of its duty to defend Centrex and resulting in loss of coverage thereunder. (ECF No. 19).

"An insurance policy is a contract." *Senteney v. Fire Ins. Exch.*, 707 P.2d 1149, 1150 (Nev. 1988). Under Nevada law, "to succeed on a breach of contract claim, a plaintiff must

James C. Mahan
U.S. District Judge

- 4 -

show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

The policy states that "[UIC] will have the right and the duty to defend the insured against any 'suit' seeking those damages." (ECF No. 19 at 26) (emphasis and alterations omitted). Further, the policy provides that in the event of a claim or suit, the insured must "cooperate with [UIC] in the investigation or settlement of the claim or defense against the 'suit.'" (ECF No. 19 at 26).

Under Nevada law, "[a]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004) (quotation omitted). "Once the duty to defend arises, 'this duty continues throughout the course of the litigation.'" *Id.* (quoting *Home Sav. Ass'n v. Aetna Cas. & Surety*, 854 P.2d 851, 855 (Nev. 1993)). Doubts as to whether the duty to defend arises must be resolved in favor of the insured. *Id.* "Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy." *Id.*

UIC acknowledges that it had a duty to defend Centrex in the *Story* action with respect to claims arising from the work of Valley—specifically, the claims by the Weisses. According to UIC's counterclaim, the homeowners in the *Story* action filed an amended complaint on March 29, 2012, which included claims arising from Valley's work so as to give rise to the potential of liability under the policy. (ECF No. 19 at 26). Further, UIC states that Centrex's second tender letter, dated March 28, 2012, included the Weisses, who were not included in the October 20, 2011 tender letter.

The counterclaim fails to allege sufficient facts to support a reasonable inference that UIC's damages arose from Centrex's conduct or that Centrex's failure to cooperate deprived UIC of its contractual right to control the defense. UIC alleges that it agreed in writing to

participate in Centrex's defense effective March 28, 2012, the date upon which UIC determined that a potential for coverage existed under the policy. (ECF No. 19 at 27–28). The writing also stated that UIC was not waiving "its right to control the litigation, including the assignment of counsel." (ECF No. 19 at 27).

The counterclaim, however, fails to allege sufficient facts to support a reasonable inference that such writing was timely submitted. To the contrary, UIC's response states that the acceptance letter was dated October 30, 2013—over a year after UIC's duty to defend arose. (ECF No. 29 at 4). Thus, UIC's counterclaim fails to sufficiently state a plausible breach of contract claim.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Centrex Home's motion to dismiss (ECF No. 26) be, and the same hereby is, GRANTED consistent with the foregoing

IT IS FURTHER ORDERED that the parties' stipulation for extension of time (ECF No. 22) be, and the same hereby is, GRANTED *nunc pro tunc* to November 30, 2016.

DATED May 19, 2017.

_____
UNITED STATES DISTRICT JUDGE